# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TDI GLOBAL SOLUTIONS, INC., | ) | |
| Plaintiff, | ) | 14 C 2455 |
| v. | ) | Judge John Z. Lee |
| PCTI HOLDINGS, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff TDI Global Solutions, Inc., brought suit against PCTI Holdings, Inc., alleging breach of warranty (Count I), breach of implied warranty of merchantability (Count II), and breach of contract (Count III). The parties filed cross-motions for summary judgment. For the reasons stated below, the Court grants in part and denies in part PCTI's motion [42] and denies TDI Global's motion [72].

## Factual Background[1]

TDI Global is an intermediary in the packaging industry. *See* Pl.'s LR 56.1 Stmt. ¶ 15, ECF No. 74. In that role, TDI Global works with companies that supply materials and companies that convert those raw materials into packages for TDI Global's clients. *See id.* ¶ 15. PCTI is a toll converter, which means that it has the capability to take raw materials such as plastic film and convert it into pouches. *See id.* ¶ 16.

In this particular case, TDI Global was hired by Midland Paper Company for the creation of flexible plastic pouches that were to be used to package edible powders. *See id.* ¶ 20–21. TDI Global purchased the plastic film from a separate company and sent it to PCTI to convert the film into pouches. *See id.* ¶¶ 23, 26. Once PCTI converted the film into pouches, it shipped the

---

[1] The following facts are undisputed unless otherwise noted.

finished product to Midland's customer, Optimum Nutrition. *See id.* ¶ 33. It is undisputed that PCTI knew the pouches were for edible powders. *See id.* ¶ 27.

There are two documents that memorialize certain aspects of this relationship. The first is a purchase order issued by TDI Global to PCTI that lists four requests for "Pouch Converting." *See id.*, Ex. A ("Purchase Order"). For each item the description reads:

> Pouch Converting
> 12lb Pouch Serious Mass Chocolate
> 11.5" x 20.875" x 5.375" Quad Seal
> Zippered - Press to Close (Powder Proof)

Purchase Order at 1. The second relevant document is a three-page product specification that includes details for the plastic film and for the size and style of the pouches. *See* Pl.'s LR 56.1 Stmt., Ex. J ("Product Specification").

During the conversion of the plastic film into pouches by PCTI, an error occurred that caused plastic material to fall into the pouches. *See id.* ¶ 29.[2] PCTI's quality inspection did not reveal the extra plastic, and many of the pouches that were shipped to Optimum Nutrition contained the defect. *See id.* ¶ 32–33. Optimum Nutrition filled the pouches it received from PCTI with edible powder, but at some point thereafter discovered the presence of the extraneous plastic in the pouches. As a result, Optimum Nutrition had to sift through and repackage the pouches. *See id.* ¶¶ 36–37, 44–45.

Midland Paper paid Optimum Nutrition $119,460 for the costs associated with sifting through the packaged powder and then repackaging the powder into new pouches. *See id.* ¶¶ 47, 49. TDI Global reimbursed Midland Paper for the amount it paid Optimum Nutrition. *See id.* ¶ 49.

---

[2] What exactly caused the extraneous plastic to end up in the pouches is a matter of dispute. *See* Def.'s Resp. Pl.'s LR 56.1 Stmt. ¶ 29, ECF No. 78.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

## Analysis

### I. Applicability of the Uniform Commercial Code

PCTI's sole argument in its motion for summary judgment is that the Uniform Commercial Code (UCC) is not applicable to the contract at issue. Article 2 of the UCC, as enacted by Illinois, applies only to "transactions in goods." 810 Ill. Comp. Stat. 5/2-102. As a result, contracts for services are excluded from Article 2 of the UCC. *See Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082 (7th Cir. 2013). Both parties agree that Count I (breach of warranty) and Count II (breach of implied warranty of merchantability) are based on the UCC and, therefore, are viable claims only if the transaction here constituted "a sale of goods."

Not surprisingly, PCTI argues that it was hired by TDI Global not to provide a good, but to perform a service: converting raw materials (plastic film) into a different form (pouches). TDI

Global disagrees and characterizes the transaction as a sale of the finished pouches. As the party seeking the benefit of the UCC, TDI Global has the burden of establishing that the transaction was a sale of goods. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 530 (7th Cir. 1999).

The undisputed facts in this case demonstrate that the contract was for services and not a sale of goods. PCTI's role in the production of pouches involved converting the raw materials into a pouch. The UCC defines a "sale" as "the passing of title from the seller to the buyer for a price." 810 Ill. Comp. Stat. 5/2-106(1). Here, the raw materials were purchased by TDI Global, and ownership of the materials was never transferred to PCTI while it converted the film into pouches. *See* Pl.'s LR 56.1 Stmt. ¶ 23; Def.'s LR 56.1 Stmt. ¶ 6, ECF No. 46.[3] The physical shipment of plastic film to PCTI and the subsequent shipment of the finished pouches to TDI Global's customer is merely incidental to the service that PCTI was providing to TDI Global. *See IMI Norgren Inc. v. D&D Tooling & Mfg., Inc.*, No. 00 C 5789, 2003 WL 21501783, at *3 (N.D. Ill. June 25, 2003) (noting that "the change in physical custody of the goods was only incidental to the transaction" and holding that the heat treatment applied to the plaintiff's goods was a service).

In fact, the purchase order created by TDI Global refers to what PCTI was offering as "Pouch Converting," further supporting the notion that PCTI was providing a service rather than selling goods. *See* Purchase Order at 1. And the manner in which parties to a contract choose to describe their transaction is relevant in determining whether it is a contract for services or a sale

---

[3] TDI Global argues that Optimum Nutrition, as the ultimate customer in the chain, owned the film. *See* Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶ 6, ECF No. 71. Whether TDI Global or Optimum Nutrition held title to the film while PCTI converted it is irrelevant. What matters is that PCTI never possessed title to the film—a fact that is not disputed. *See* Pl.'s LR 56.1 Stmt., Ex. D at 26:3–11 ("Jon Hermes Dep.").

of goods. *See Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, No. 11 C 3318, 2012 WL 1577676, at *8 (N.D. Ill. May 4, 2012) (relying, in part, on the work order that described the work to be done as services, including "project management, packaging and labeling, and storage and distribution"); *NIM Plastics Corp. v. Standex Int'l Corp.*, 11 F. Supp. 2d 1003, 1005 (N.D. Ill. 1998) (highlighting that the agreement required the party to "refinish" and "etch").

TDI Global nevertheless argues that, because PCTI took the plastic film, converted it into plastic pouches, and shipped those pouches to its customer (or, in this case, its customer's customer), PCTI was selling "goods" as that term is defined in the UCC. *See* 810 Ill. Comp. Stat. 5/2-105(1) (defining a good as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale"). But it is not enough that a moveable good is involved in the transaction in some incidental fashion. Take, for example, a tailor that agrees to alter a suit. The customer delivers the suit to the tailor who, after performing the alterations, gives the suit back to the customer. The transaction does not become a sale of goods just because a good is being passed back and forth. *IMI Norgren* is instructive. There, in concluding that the agreement at issue was one for services, the court explained that the plaintiff had given the defendant its goods merely in order for the latter to treat them. *IMI Norgren*, 2003 WL 21501783, at *3.[4] Just as in that case, PCTI received the film and shipped the finished pouches as part of the conversion service, but it never owned the products or sold the pouches to TDI Global as goods.

---

[4] TDI Global tries to distinguish *IMI Norgren* by arguing that unlike the heat treatment in that case, PCTI was converting the plastic film into a completely different good. *See* Pl.'s Resp. & Mot. SJ at 9, ECF No. 72. TDI Global makes no attempt to explain why this difference is significant. In fact, the case law on this issue does not support its position. *See Meyer v. ERJ, Inc.*, No. 96 C 0143, 1997 WL 158354, at *4 (N.D. Ill. Mar. 31, 1997) (holding that an arrangement by which a party printed, cut, and sewed cloth into bedspreads, sheet sets, and comforters was a contract for services, not for the sale of goods).

In sum, the Court finds that the transaction at issue here was for services, not the sale of goods, and thus was not covered by the UCC. PCTI's motion for summary judgment is granted as to Counts I and II. As for Count III, however, the breach of contract claim does not necessarily arise out of the UCC. Although TDI Global makes a reference to a sale of goods in Count III, the Court construes it as a common law breach of contract claim. Because the claim can be interpreted as raising a theory that is not based on the UCC, the motion for summary judgment is denied as to Count III.

## II. Common Law Breach of Contract

In its motion for summary judgement, TDI Global argues that there is no genuine dispute that PCTI breached its obligations under the contract. *See* Pl.'s Resp. & Mot. SJ at 3–7. "To succeed on a claim for breach of contract, a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach." *Kopley Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 226 (Ill. App. Ct. 2007). PCTI's response challenges only the third element and argues that PCTI did not breach the contract because it did not have a duty to ensure the pouches were free of extraneous plastic. *See* Def.'s Reply & Resp. Pl.'s Mot. SJ at 7–9.

Based upon the facts in the record, a reasonable jury could find that PCTI breached its agreements by sending Optimum Nutrition the converted pouches with small plastic pieces inside. But in order to prevail on summary judgment, TDI Global must show more. Given that the written documents are silent on the matter, to prevail at this stage, TDI Global must point to undisputed evidence showing that PCTI was obligated to provide plastic-free pouches, for example, by industry practice, common understanding, or a separate agreement between the parties.

In an attempt to carry its burden, TDI Global points to various possible sources that impose upon PCTI a duty to inspect the inside of the pouches. *See* Pl.'s Resp. & Mot. SJ at 4. For example, TDI Global's Local Rule 56.1 statement of facts asserts that "[u]nder the terms of their purchase order and contract, PCTI was to . . . inspect the pouches to ensure the pouches met quality expectations." Pl.'s LR 56.1 Stmt. ¶ 28. (The contract referred to in the statement of facts appears to be the product specifications, as there is no other document cited or attached.) Yet, as PCTI argues in its response, there is no provision in the purchase order or the product specifications requiring PCTI to perform inspections. *See* Def.'s Resp. Pl.'s LR 56.1 Stmt. ¶ 28. The product specifications do state certain properties that the pouches must meet (for example, the document dictates the size the pouches must be), but it never creates a requirement that the pouches must be inspected. *See* Product Specification at 1. It is telling that TDI Global's citations supporting its statement of fact are not even to the two documents it suggests contain these terms. Instead, TDI Global cites two depositions, neither of which support the notion that the purchase order and the product specification give rise to PCTI's duty to inspect.

Next, TDI Global attempts to ground PCTI's duty to inspect in 21 U.S.C. § 342(a)(1). *See* Pl.'s LR 56.1 Stmt. ¶ 50. That statutory provision deems a food to be adulterated if "it bears or contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342(a)(1). Beyond simply citing the statute, TDI Global makes no attempt to explain how § 342 interjects a duty into the parties' contractual relationship. If TDI Global wants to base its breach of contract claim on this statute, it needs to explain how PCTI's alleged violation of a

federal statute breaches the contract—either as documented in the purchase order and product specifications or as specified in an oral agreement between TDI Global and PCTI.[5]

Third, TDI Global points to deposition testimony suggesting that it was the industry standard and custom for toll converters to test for contaminants. *See* Pl.'s LR 56.1 Stmt. ¶ 52. But if this is TDI Global's theory, PCTI offers countervailing evidence to create a factual dispute. *See* Def.'s Resp. Pl.'s LR 56.1 Stmt. ¶ 52 (citing Pl.'s LR 56.1 Stmt., Ex. R at 53:18–21 ("Steirer Dep.")) ("Q: Is it industry standard for toll converters to inspect the inside of pouches absent some specific request from the customer? A: No."). As such, the Court cannot grant summary judgment to TDI Global based upon the argument that industry standards for toll converters required PCTI to ensure there was no residual plastic in the pouches.

TDI Global's fourth basis for summary judgment is based on the idea that, although the documents are silent, the parties had otherwise agreed that PCTI was required to make sure the pouches were free of defects. *See* Pl.'s LR 56.1 Stmt. ¶¶ 51, 55. Once again, however, the record is insufficient to support a judgment for TDI Global at this stage. TDI Global points to two portions of PCTI's president's deposition. In the first, he notes that PCTI would be responsible for any error caused by PCTI. *See id.*, Dytchckowskyj Dep. at 98:19–99:2. In the second, he states that the foreign plastic needed to be filtered out before the pouches could be put on the market. *See id.* at 111:18–112:4. Both statements fall short of evidence that TDI Global and PCTI had orally agreed that PCTI was responsible for inspecting and filtering out extraneous

---

[5] Relatedly, TDI Global also states that PCTI's duty to inspect arises from the fact that Optimum Nutrition is reviewed and audited by the Food and Drug Administration. *See* Pl.'s LR 56.1 Stmt. ¶ 54. As with the citation to § 342, there is no attempt to explain how various statutory requirements imposed upon Optimum Nutrition created a contractual duty between PCTI and TDI Global.

material from the finished pouches. At trial, TDI Global may be able to show that such an oral agreement existed, but the record is insufficient to establish this as a matter of law.

Lastly, TDI Global relies on the certificate of analysis that PCTI issued for the converted pouches as evidence of a breach. *See* Pl.'s LR 56.1 Stmt. ¶ 53. Yet the certificate does nothing more than confirm that the pouches met certain technical qualifications, none of which relate to the flaw at issue in this case. *See id.*, Ex. M at 1–2. Thus, the certificate of analysis cannot serve as the basis for TDI Global's breach of contract case.

In sum, TDI Global has failed to carry its burden of showing that there is no genuine disputed fact that PCTI breached the contract by failing to discover and filter out the plastic pieces left in the pouches. The Court thus denies TDI Global's motion for summary judgment.

## Conclusion

For the reasons stated herein, PCTI Holdings' motion for summary judgment [42] is granted as to Counts I and II and denied as to Count III. TDI Global's motion for summary judgment [72] is denied.

**IT IS SO ORDERED.**                    ENTERED    3/29/16

_____

**John Z. Lee**
**United States District Judge**