IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TDI GLOBAL SOLUTIONS, INC.<br>A Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>PCTI HOLDINGS, INC.<br>A Wisconsin corporation, d/b/a Pouch Converting Technologies, Inc.<br><br>    Defendant, | Case No. 14-cv-02455<br><br>Honorable Judge John Z. Lee<br><br>Magistrate Judge Maria Valdez |

## **MOTION FOR ENTRY OF JUDGMENT**

NOW COMES Plaintiff, TDI Global Solutions, Inc., by and through its attorneys, Barney & Karamanis, LLP, and respectfully moves this Honorable Court for entry of of Judgment against Defendant PCTI Holdings, Inc.'s ("PCTI"). In support of its motion, Plaintiff states as follows:

1. On or about August 10, 2016, the parties to this case reached a mutually agreeable settlement, wherein, *inter alia*, the individual former owners of Defendant PCTI would pay Plaintiff the amount of $5,000.00, Defendant PCTI would agree to an entry of judgment for the full amount of calculated damages, and Defendant PCTI would assign Plaintiff its rights in the declaratory action filed by their insurance provider, Erie. *See* Settlement Agreement attached hereto as Exhibit "A."

2. Thus, Plaintiff now prays for an entry of judgment against Defendant PCTI Holdings, Inc. in the amount of $130,802.10 in damages, plus prejudgment interest in the amount of $15,369.25 (calculated at 5% per annum), and plus costs in the amount of $3,485.27.

3. The total amount of the judgment should be $149,656.62.

4. The itemization of costs are as follows:

- Transcripts of Becky Steirer,
  David Dytchkowskyj, and Kevin Riggs: $1269.20
- Transcript of Thomas Wetsch: $525.00
- Transcripts of Jon Hermes and Josh Hermes: $675.55
- Transcript of Chris Hughes: $300.90
- Deposition of Thomas Wetsch: $175.00
- Postage for subpoena: $14.46
- Postage for subpoenas: $14.46
- Witness Fee Kevin Riggs: $50.00
- Witness Fee Becky Steirer: $50.00
- Courier to Fed Court: $5.35
- Courier to Fed Court: $5.35
- Filing Fee: $400.00

  _____
- TOTAL: $3485.27

WHEREFORE Plaintiff, TDI Global Solutions, Inc., by and through its attorneys, Barney & Karamanis, LLP respectfully prays for this Honorable Court to enter a Judgment in the favor of Plaintiff TDI Global Solutions, Inc., in the amount of $149,656.62, against Defendant PCTI Holdings, Inc., and award such other relief for Plaintiff as this Court deems just and proper.

Respectfully submitted,

**TDI GLOBAL SOLUTIONS, INC.**

By: /s/ Kenneth A. Nazarian
     One of Its Attorneys

James A. Karamanis (ARDC #6203479)
Kenneth A. Nazarian (ARDC # 6309765)
Barney & Karamanis, LLP
180 N. Stetson, Ste 3050
Chicago, Illinois 60601
Tel.: 312/553-5300
*Counsel for Plaintiff*

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is made effective as of the latest date below written, and is made by and between PCTI HOLDINGS, INC. ("PCTI"), THOMAS WETSCH ("Wetsch"), DAVID DYTCHKOWSKYJ ("Dytchkowskyj"), BERNARD SCHAEFER ("Schaefer"), ERIE INSURANCE EXCHANGE ("Erie") and TDI GLOBAL SOLUTIONS, INC. ("TDI"). PCTI, Wetsch, Dytchkowskyj, Schaefer, Erie and TDI shall collectively be known as the "Parties".

WHEREAS, on or about December 10, 2012, PCTI converted or otherwise created approximately 16,000 plastic food pouches pursuant to a purchase order issued by TDI and thereafter shipped the pouches to TDI's eventual customer, Optimum Nutrition ("Optimum");

WHEREAS, in or about March of 2013, Optimum discovered that certain of the pouches converted and shipped by PCTI contained pieces of plastic scrap in the inside of the pouches and subsequently rejected approximately 16,000 pouches (referred to herein as the "Subject Pouches");

WHEREAS, as a result of Optimum's rejection of the Subject Pouches and subsequent efforts, Optimum incurred certain damages totaling $119,460.00 for which TDI was required to reimburse Optimum and Optimum otherwise refused to pay an additional $11,342.10 in relation to the Subject Pouches;

WHEREAS, on or about April 28, 2014, TDI filed a Complaint in the United States District Court of the Northern District of Illinois, Case No. 14-cv-02455, against PCTI, to recoup its losses in relation to the sale of Subject Pouches to Optimum (referred to herein as the "TDI Lawsuit");

WHEREAS, PCTI has denied the allegations asserted by TDI and otherwise asserted various defenses to the TDI Lawsuit;

WHEREAS, PCTI has tendered its defense and sought indemnity from Erie in relation to the TDI Lawsuit pursuant to a certain policy of insurance and Erie has denied that indemnity coverage exists for the claim, issued a reservation of rights in relation to the same and on or about June 22, 2016, Erie filed a Complaint in the Circuit Court of Cook County, Illinois against PCTI and TDI (referred to herein as the "Erie Lawsuit") seeking, among other things, a declaration that Erie has no obligation to indemnify PCTI for the claims made in the TDI Lawsuit;

WHEREAS, neither PCTI, nor TDI have appeared in or responded to the Erie Lawsuit, but PCTI and TDI deny the allegations of Erie as set forth therein and otherwise maintain various defenses to the Erie Lawsuit;

WHEREAS, Wetsch, Dytchkowskyj and Schaefer (referred to collectively herein as "PCTI Investors") are or were shareholders of PCTI. In addition to the claims made in the TDI Lawsuit, TDI has also threatened ultra vires and other claims against the PCTI Investors in relation to TDI's losses with respect to the Subject Pouches at issue (referred to herein as the "TDI Investor claims");

1



WHEREAS, the PCTI Investors deny the allegations and claims made by TDI in relation to the TDI Investor claims and otherwise maintain certain and various defenses thereto;

WHEREAS, the Parties desire to fully resolve and otherwise end the dispute in relation to the TDI Investor claims and avoid the costs and uncertainties of litigation. As a result thereof and in consideration of the promises, covenants and undertakings contained herein, the Parties agree as follows:

1. Settlement. The Parties agree to settle the TDI Investor claims pursuant to the terms and conditions set forth in this Agreement. The sole consideration for this settlement, the adequacy of which is hereby acknowledged, is set forth in this Agreement.

2. Payments. The PCTI Investors shall cause to be paid the sum of $5,000.00 (FIVE THOUSAND DOLLARS) to TDI within three (3) business days of the date on which this Agreement is fully executed by all Parties.

3. Agreed Judgment. Upon full execution of this Agreement, PCTI and TDI shall cause a judgment to be entered against PCTI and in favor of TDI in the TDI Lawsuit in the amount of $130,802.10 plus prejudgment interest and costs (referred to herein as the "TDI Judgment"). The amounts paid to TDI by the PCTI Investors pursuant to this Agreement shall be deemed a post-judgment set off against the TDI Judgment and shall otherwise immediately reduce the total amount of money owed under the TDI Judgment by $5,000.00 (FIVE THOUSAND DOLLARS).

4. Assignment of Insurance Rights. PCTI assigns all of its rights and interests in its insurance policy with Erie, Erie Policy Number Q 480152955, and any other insurance policy that might or could provide indemnity coverage for the TDI Judgment to TDI.

5. Assignment of APA Rights. PCTI assigns all of its rights and interests in its Asset Purchase Agreement with PF Flexibles, LLC or their successors, heirs or assigns, dated December 17, 2012 in relation to any obligation on the part of PF Flexibles, LLC contained therein concerning the claims made by TDI in the TDI Lawsuit or TDI's rights in the TDI Judgment.

6. Cooperation-TDI. PCTI and the PCTI Investors agree to fully and reasonably cooperate with TDI in relation to TDI's efforts to collect the TDI Judgment. TDI shall agree to take all steps necessary to lessen any financial burden on the part of the PCTI Investors in relation to all such cooperation efforts. In the event the PCTI Investors, individually or collectively, are forced to incur expenses in excess of $100 as a result of the cooperation requested by TDI, TDI shall agree to reimburse the PCTI Investors, or any one of them, for any and all such expenses. However, TDI shall have no obligation to reimburse the PCTI Investors, or any one of them, for wages lost as a result of such cooperation.

7. Release and Discharge. As of the date of this Agreement, in consideration of the execution of this Agreement by PCTI and the PCTI Investors and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, TDI, for itself and for all of its past, present and future affiliates, assignors, assignees, partners, officers, directors, shareholders, members, managers, employees, agents, representatives, related entities, attorneys,

heirs, legatees and successors (collectively referred to as the "TDI Releasing Parties") does hereby remise, release, forever discharge and hold harmless the PCTI Investors of and from any and all claims, demands, causes of action, obligations, damages, judgments and liabilities of whatever kind or character, whether legal, equitable or statutory, known or unknown, present or contingent, that each of the TDI Releasing Parties has or may have against the PCTI Investors, including, without limitation, those claims, demands, causes of action, obligations, damages, judgments and liabilities arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the TDI Lawsuit, (b) the TDI Judgment, (c) PCTI, (d) PF Flexibles, LLC and (e) the Subject Pouches (collectively, the "TDI Released Claims").

8. Covenant Not To Sue. TDI, on behalf of itself and the TDI Releasing Parties, covenant, promise, represent, warrant, and affirm that none of them will (a) file, initiate, institute, or otherwise control an action, claim, court proceeding, arbitration, or dispute of any kind against the PCTI Investors or (b) cause or influence another legal entity or person, to bring a claim or cause of action against any PCTI Investor, with respect to any matter whatsoever arising out of acts, omissions, causes or occurrences related to the TDI Lawsuit and/or related to the TDI Judgment provided however that TDI may take action to enforce this Agreement in the event that the PCTI Investors breaches its obligations under this Agreement.

9. No Agency. Nothing in this Agreement shall be construed to create an agency relationship between the PCTI Investors and PCTI, apparent or otherwise. It is expressly understood between the parties hereto that, any release imported by this Agreement shall apply only to the PCTI Investors in their individual capacity and not to any other Party. Additionally, the Agreed Judgment provided to TDI by PCTI is for the express purpose of saving the cost and expense related to the trial of this action.

10. Stipulation of No Defense. Erie agrees and otherwise stipulates for purposes of the Erie Lawsuit that this Agreement and its terms and conditions shall not be utilized, in and of itself, as a basis to deny insurance coverage for the Subject Pouches, TDI Lawsuit and/or TDI Judgment to PCTI and/or TDI in the Erie Lawsuit. Erie also agrees and stipulates that it waives any and all defenses based on the lack of cooperation or the failure to obtain Erie's consent to settle and that for purposes of the Erie Lawsuit, the Agreed Judgment referenced herein shall have the same force and effect against Erie as if the TDI lawsuit had proceeded to trial and a judgment rendered therein.

11. Erie Benefits. To the extent Erie is determined to be responsible to indemnify PCTI and/or TDI for the TDI Judgment or any part thereof, Erie will in no event be required to pay any amounts to PCTI, TDI or their successors and assigns arising out of prejudgment interest and PCTI, TDI and their successors and assigns specifically release and discharge Erie from any such payment of prejudgment interest as contained in the TDI Judgment. Further, PCTI, TDI and their successor and assigns expressly agree and stipulate that Erie has not acted in bad faith and that, at present, no basis exists against Erie from any extra-contractual claim for bad faith and/or attorney's fees arising out of Erie's decision to deny indemnity coverage and/or file the Erie Lawsuit in relation to the claims raised in the TDI Lawsuit and/or the TDI Judgment.

12. Cooperation-Erie. PCTI and the PCTI Investors agree to fully and reasonably cooperate with Erie in relation to the Erie Lawsuit. Erie shall agree to take all steps necessary to

lessen any financial burden on the part of the PCTI Investors in relation to all such cooperation efforts. After the PCTI Investors cause their counsel to accept service and otherwise appear in the Erie Lawsuit for PCTI, which events PCTI Investors shall cause to happen within seven (7) days of the execution of this Agreement, in the event the PCTI Investors, individually or collectively, are forced to incur expenses of any kind in excess of $100 as a result of the cooperation requested by Erie, Erie shall agree to reimburse the PCTI Investors, or any one of them, for any and all such expenses. However, Erie shall have no obligation to reimburse the PCTI Investors, or any one of them, for wages lost as a result of such cooperation. In addition, Erie shall make payment to PCTI's legal counsel for all fees and costs reasonably incurred in PCTI's defense of the TDI Lawsuit and will agree to refrain from seeking reimbursement of any such fees from the PCTI Investors. However, Erie will have no obligation to pay any legal fees incurred by PCTI and/or TDI in defending the Erie Lawsuit.

13. <u>Denial of Liability</u>. This Agreement shall not be interpreted as an acknowledgement or admission of wrongdoing or liability by the PCTI Investors, which is expressly denied by the PCTI Investors.

14. <u>No Prejudice to Erie</u>. Nothing contained in this Agreement shall prohibit Erie from negotiating or otherwise entering into a future settlement with TDI concerning the TDI Judgment, Erie Lawsuit or otherwise. However, any such settlement shall be in writing and shall not otherwise impact or prejudice the PCTI Investors without their express written consent.

15. <u>Binding Nature</u>. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their heirs, successors, beneficiaries and assigns.

16. <u>Titles</u>. Titles and headings to articles, sections or paragraphs in this Agreement are inserted for convenience of reference only and are not intended to affect the interpretation or construction of the Agreement.

17. <u>Interpretation</u>. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, and the parties agree to take any and all steps which are necessary in order to enforce the provisions hereof. In the event any provision in this Agreement is found ambiguous, the Parties shall be deemed to have jointly draft the terms of this Agreement and any interpretation of this Agreement shall not be construed against any of the Parties.

18. <u>Entire Agreement; Integration; Parole Evidence; Amendment.</u> With respect to all Parties, this Agreement represents the entire and sole agreement and understanding concerning the subject matter expressed herein; none of its terms may be altered, except in writing, and then only if signed by all the Parties hereto; all prior and contemporaneous agreements, understandings, communications, conditions, or representations of any kind or nature, oral and written, are merged into this Agreement and the terms of this Agreement supersede all such other agreements; and no extraneous information may be used to alter the terms of this Agreement.

19. <u>Copies</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall be considered one instrument and shall

become binding when one or more counterparts have been signed by each of the parties and delivered to the other. Facsimile and scanned email signatures shall be as fully effective as original signatures.

20. <u>Authorization</u>. The Parties do hereby declare that this Agreement has been duly authorized by each of the Parties hereto after consultation with counsel, and that the undersigned do fully understand the terms of this Agreement. The Parties' acknowledge that in signing this Agreement they are relying upon advice of their counsel and expressly disclaim reliance on any oral or written representations not otherwise contained in and incorporated into the terms of this Agreement.

21. <u>Enforceability</u>. If any portion of this Agreement is found to be unenforceable, the remainder shall remain in full force and effect.

22. <u>Choice of Law</u>. This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Illinois.

23. <u>Attorney's Fees</u>. In the event any Party takes any legal action to enforce this Agreement against a Party in breach of this Agreement, the Party that prevails in such legal action shall be entitled to recover its attorney's fees and litigation costs incurred in doing so from the non-prevailing Party.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the latest date below written.

### [THIS DOCUMENT IS 5 PAGES-READ ALL 5 PAGES BEFORE SIGNING]

| **PCTI Holdings, Inc.** | **TDI Global Solutions, Inc.** |
|---|---|
| By: _____ | By: *[signature]* |
| Dated: _____ | Dated: 25 Aug 2016 |
| | |
| **Erie Insurance Exchange** | **Thomas Wetsch** |
| By: _____ | _____ |
| Dated: _____ | Dated: _____ |
| | |
| **David Dytchkowskyj** | **Bernard Schaefer** |
| _____ | _____ |
| Dated: _____ | Dated: _____ |

5